# EXHIBIT D



JONATHAN ZAVIN
Partner

345 Park Avenue
New York, NY 10154

**Direct**  212.407.4161
**Main**   212.407.4000
**Fax**    212.658.9105
jzavin@loeb.com

Via E-mail
Via U.S. Mail

March 9, 2018

Tonja B. Carter
Post Office Box 278
Monroeville, AL 36461

Re:   *To Kill A Mockingbird* ("TKAM")

Dear Ms. Carter:

We are counsel for Rudinplay, Inc. This is in response to your letter to Scott Rudin dated March 5, 2018, regarding the upcoming live stage production of TKAM ("the Play").

First, I want to make it clear that Scott, and Rudinplay, want to work with the Estate of Harper Lee, as appropriate, regarding this project. In that regard Scott would be very happy to get together with you. While he appreciates the offer to come to Monroeville, his schedule is such (with three plays in production) that the meeting would need to be in New York. In anticipation of that meeting to discuss your concerns regarding the present script for the production, however, we need to point out the following:

1.    The June 29, 2015 Agreement between Harper Lee and Rudinplay regarding the live stage and other ancillary rights to TKAM ("the Agreement") provides limited approval rights to Ms. Lee or her Estate (together "the Author"). The Author had absolute approval rights over the selection of the playwright for the Play. This approval right was provided to give Ms. Lee comfort that the writer chosen was of sufficient talent and stature to do justice to her work. The writer chosen was Aaron Sorkin, one of the leading writers in America today, and Ms. Lee and her assignees approved of that selection. Once the writer was approved, however, Ms. Lee's right of approval was exhausted and paragraph 12 provides that the Author has only the right "to review the script of the Play and to make comments which shall be considered in good faith by the playwright...." Even if the Author believes that the Play derogates or departs from the spirit of the Novel, or alters its characters, the Author's remedy is that the Author "will be afforded an opportunity to discuss with the Owner [Rudinplay] resolutions of any such concerns. The Author is therefore not the final arbiter of what "derogates or departs from the spirit of the Novel, or alters its characters." That notwithstanding, we are eager to discuss the issues raised in good faith by the Estate and to have a dialogue about these issues.

2.    Scott does not feel the present draft of the script of the Play either derogates or departs from the spirit of the Novel or alters its characters. Clearly the Play was anticipated to be, and could only be, different from the Novel. The Play focuses on one part of the Novel, the trial of Tom Robinson. The Play's emphasis is therefore different than the Novel's, as well as the movie based on the novel. Further, a live stage play has inherent limitations, and profound

For the United States offices, a limited liability partnership including professional corporations. For Hong Kong office, a limited liability partnership.

16044061.2
227691-10003


Tonja B. Carter
March 9, 2018
Page 2

obligations, in its available means of expression found neither in a novel or a movie. As one example only, the lead actors in a Broadway stage play cannot be 7 or 10 year old children, as children could not possibly carry these roles eight times every week, so the characters of Jem, Scout and Dill have to be played by older actors. It was thus never expected that the Play would merely be the recitation of the Novel from the stage of a theater. The script of the Play may add to the Novel, but it does not derogate or depart from the spirit of the Novel, nor alter the fundamental natures of the characters in the Novel. I note in this respect that Ms. Lee herself added to the Novel and its characters (and gave them a different perspective) when she published *Go Set A Watchman* (which is not used in the Play), despite the order in which the two books were written, and I'm sure that she did not do so in derogation of the Novel or a departure from its spirit.

3.    As stated above, Aaron Sorkin is one of the leading writers in America. He would hardly be needed to write the Play if the intent was to merely do a transcription of the Novel on the stage. Presumably Ms. Lee was well aware that Mr. Sorkin would be bringing his perspective and talent to the Play, and that the Play would not be identical in all respects to the Novel. Mr. Sorkin has, in fact, brought to the Play exactly the type of perspective that Ms. Lee presumably anticipated, and that any writer of such stature would be expected to reasonably attempt. In any adaptation of a work, particularly a longer work into a shorter work, choices have to be made, material has to be left out, and new material added to make a cohesive whole. Further, in an adaptation, as opposed to a mere abridgment, the author brings his own perspective and views to the work, and does not merely copy the pre-existing work. Rather, an adaptation, such as an adaptation of the Novel into the Play, changes the work to suit the conditions and needs of the theater, which include need for more immediate drama, conflict and timeliness. The Play is an adaptation, but it is certainly not derogatory of the Novel, nor does it depart from its spirt or change the nature of its characters.

4.    There is a limited time to make extensive changes in the script. The second and last workshop for the Play is approximately five weeks away. Actors and a director have been retained for this workshop, and space retained. A theater has been reserved for the Play to open in December 2018. The Play is cast and the company is contracted. These are realities that cannot be ignored.

5.    The limited time to make changes in the script has been exacerbated by the fact that virtually this same script was sent to you more than six months ago, on August 24, 2017, through Andrew Nurnburg. It is my understanding that there were almost no comments made by you regarding the script up until your letter of March 5, after an almost identical script was sent to you on January 27, 2018. The only two comments that Scott recalls receiving on this first script was first, a comment regarding the discussion of passive aggression between Atticus and Calpurnia, and he believes that was fixed pursuant to that comment. The second comment was in an e-mail dated September 28, 2017, to Scott from Andrew Nurnberg, in which he conveyed your concern that the Atticus in the Play not progress to the older Atticus in *Go Set A Watchman*. Scott responded to Andrew the very next day, September 29, explaining that "[W]e're not looking to make any wholesale changes from what Nelle did but simply to dramatize the book, which is sometimes very passive and more ruminative than dramatic."... "We may want to draw events or relationships slightly differently than Nelle did because we have to have drama occurring (whereas the book does not), and because it is conflict that makes for



Tonja B. Carter
March 9, 2018
Page 3

drama...." Since that e-mail on September 29, 2017 until your letter of March 5, 2018, more than five months later, Scott hasn't received any other written comments from you or Andrew. Even at your meeting with Scott a few weeks ago, I understand that you had many fewer reservations about the script, and didn't raise many of the comments that are in your March 5, 2018 letter. Having waited so long to make comments, it is unreasonable to expect that extensive changes can be achieved five weeks before the second workshop. It simply is no longer possible, even if Scott were in agreement with everything in your March 5 letter.

Despite the foregoing, as I stated in the beginning, Scott would like to consult with you to discuss with you your concerns, and to see if it is possible to resolve at least some of them. Please let Scott know when it would be convenient for you to come to New York to meet with him. Given the timing of the production of the Play, this meeting should certainly be sooner rather than later.

If you have any questions about anything in this letter, please feel free to also contact me directly. As I'm sure you understand, nothing in this letter constitutes an admission of any kind, or a waiver of any rights or remedies that RudinPlay may have, all of which are specifically reserved.

Sincerely,

Jonathan Zavin
Partner

cc: Scott Rudin
Andrew Nurnberg (via e-mail)

16044061.2
227691-10003