# EXHIBIT B

```
             I4unrudo

 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    RUDINPLAY, INC.,

 4                 Plaintiff,

 5           v.                                18 Civ. 3300 (AT)

 6    TONJA B. CARTER, ESTATE OF
      NELLE HARPER LEE,
 7
                   Defendants.                 Argument
 8    ------------------------------x
                                               New York, N.Y.
 9                                             April 30, 2018
                                               3:05 p.m.
10
      Before:
11
                          HON. ANALISA TORRES,
12
                                               District Judge
13

14                           APPEARANCES

15
      LOEB & LOEB
16         Attorneys for Plaintiff
      BY:  JONATHAN ZAVIN
17         SARAH SCHACTER

18
      BRADLEY ARANT BOULT CUMMINGS LLP
19         Attorneys for Defendants
      BY:  MATTHEW H. LEMBKE
20         JEFFREY M. ANDERSON
              and
21    ROSENBERG & GIGER
           Attorneys for Defendants
22    BY:  JOHN J. ROSENBERG

23

24

25
```

1       THE COURT:  We are here today for a hearing in the

2  matter of *Rudinplay Inc. v. Tanya B. Carter and the Estate of*

3  *Nelle Harper Lee* in June 2015.  Plaintiff, Rudinplay, Inc.

4  entered into a contract with Nelle Harper Lee to acquire the

5  rights to produce a theatrical adaptation of her Pulitzer

6  Prize-winning novel "To Kill a Mockingbird."  Paragraph 12 of

7  the contract includes a provision that states, "The play shall

8  not derogate or depart . . . from the spirit of the Novel nor

9  alter its characters."

10      Harper Lee died in February 2016.  The play is

11 scheduled to debut in December 2018.  In March 2018, after

12 reviewing drafts of the script, defendants brought an action

13 against plaintiff in the United States District Court for the

14 Southern District of Alabama, seeking a declaratory judgment

15 that the play derogates or departs from the spirit of the novel

16 and alters a number of its characters.  On April 16, 2018,

17 plaintiff filed this action for a declaratory judgment that the

18 play does not derogate or depart from the spirit of the novel

19 or alter its characters and that Carter is not the proper

20 representative of the estate.

21      Plaintiff now moves for expedited discovery and to

22 schedule a trial for May 21 on its declaratory judgment claims.

23 After plaintiff filed its motion, I ordered the parties to file

24 supplemental briefing on a number of issues, including whether

25 this action should be dismissed or stayed under the prior

1    pending action doctrine in light of the proceeding in Alabama.
2             Would counsel for plaintiff like to be heard?
3             MR. ZAVIN:  Yes, your Honor.
4             Do you have a preference where I stand?
5             THE COURT:  No, I don't.  Wherever you feel
6    comfortable is fine.
7             MR. ZAVIN:  OK.  Your Honor, I would like to make
8    clear first what your Honor is not required to decide now.
9    Your Honor is not required to ultimately decide which court
10   will hear this case.  The Alabama court has a motion to dismiss
11   for lack of jurisdiction before it.  We think it is a
12   well-taken motion, and we believe, and I know that the
13   defendant will disagree, that the Alabama court will dismiss
14   for lack of jurisdiction.  That would obviously solve the
15   problem.
16            But we can't wait for the Alabama court to act before
17   moving forward in some way.  The plaintiff has put in
18   declarations that show why this is extremely time sensitive.
19   It is not just that the play is scheduled to open, actually to
20   start public performances November 1.  Working backwards, the
21   schedule is rehearsals are September 1.  There is a workshop
22   that actually is to commence tomorrow for two weeks.  The funds
23   to capitalize the play must be raised within the next two
24   months, and the theater has to be confirmed, because without a
25   theater in New York you can't put on a play.

         Before going forward in some respects, if we wait to
see which court is going to do this, it may well all be too
late.  The whole thing will have collapsed of its own weight
because the schedule can no longer be met.

         What we are asking for is at this point for this Court
to start the discovery process.  The discovery is going to be
required whether the case is ultimately in New York or Alabama.
It is the same discovery, because we absolutely agree with the
defendants in this case that for the most part there's complete
overlap in the issues.

         It is, as your Honor said, whether the play will
derogate or depart and whether the characters are altered.  So
the discovery will fundamentally be the same.  If your Honor
were to defer at this point and wait for the Alabama Court to
act, we may be months before we get a trial.  Months is too
late.  It no longer matters at that point because the high
probability is the play will be gone.

         With losses in millions of dollars, with lives of cast
completely disrupted -- because the cast is committed, Jeff
Daniels is committed, the director is committed, everybody is
committed to this play.  Part of the problem is that the script
was first given to Mr. Nurnberg, Harper Lee's agent, in August
of last year.  Ms. Carter claimed she got it in September.  I
don't know why.  It was given to them in August.  The first
time there were substantive comments on the script was

1  February.  The real substantive comments were March, that March
2  5 letter.
3         Because of that six-month delay, we are all here, and
4  we have this very practical problem.  The law is clear, I
5  believe, that your Honor has discretion in this matter.  We
6  don't think you need to resolve which case ultimately goes
7  forward under the first-filed rule.
8         THE COURT:  One moment, please.
9         MR. ZAVIN:  Sure.
10        THE COURT:  I'm sorry.  Please continue.
11  We don't think your Honor needs at this point to even
12  decide the first-filed rule because we believe that the case
13  will be dismissed for lack of jurisdiction in Alabama,
14  rendering that issue moot, and it will also be a useless
15  exercise to decide that that case has priority and then have it
16  dismissed.
17        One of the exceptions, of course, to the first-filed
18  rule is if there is a significant jurisdictional question in
19  one of the jurisdictions.  At a bare minimum, whether we win or
20  lose, there is a very significant jurisdictional issue as to
21  whether the Alabama court has jurisdiction over what are the
22  plaintiffs in this Court.
23        While your Honor raised the issue *sua sponte* of a stay
24  or dismissal, obviously the defendants in this case have not
25  moved for a stay or dismissal.  What they have instead done is

1   moved in the Alabama court for an injunction.  The Alabama
2   court has not issued an injunction.
3           While it is a bit of tea-leaf reading, I will freely
4   admit, based on their order requesting briefing, I think the
5   Alabama court is going to be very loath to issue such an
6   injunction.
7           My suggestion or request of this Court is there's no
8   need to decide the first-filed rule at this point.  We set a
9   discovery schedule; we start going forward.  If the Alabama
10  court chooses to exercise in its function and enjoin this Court
11  or fail to dismiss for lack of jurisdiction, that can be
12  revisited, and the whole thing can be transferred to Alabama.
13  But we just can't afford to wait, and there is no reason to.
14  Your Honor clearly has the discretion to do that and the power
15  to do that.  There's nothing that requires your Honor in the
16  first-filed rule or any other rule to at this point stay this
17  proceeding.
18          If there are any questions, I would be happy to
19  address them.
20          THE COURT:  I don't have any questions.
21          I will hear from the defense.
22          MR. ZAVIN:  Thank you.
23          MR. LEMBKE:  Thank you, your Honor.
24          Again, my name is Matt Lembke, and I appreciate the
25  opportunity to be here today to address the Court.

1          One point on which the defendants fundamentally

2  disagree with what Mr. Zavin just said is that the Court is in

3  fact having to issue a decision in connection with the

4  first-filed rule even on the limited relief that they are now

5  seeking.

6          Let me explain why.

7          I don't think there's any dispute among the parties

8  that the first-filed rule applies.  Of course, the first-filed

9  rule says, unless there is an exception, two cases raising the

10  same claim should not both proceed.  We have submitted to the

11  Court a number of cases where other judges in this district

12  have said that the decision whether to deviate in any manner

13  from the first-filed rule must rest with the first-filed court.

14  Many judges in circuit have called that a bright-line rule that

15  should be rotely applied.

16          I would note, your Honor, that in all the cases that

17  have been submitted by the plaintiff in this action I don't

18  believe I've seen a single one where there was a decision that

19  authorized to continue progressing in both cases at the same

20  time.  That is an exception to the first-filed rule.  And, of

21  course, the policy undergirding the first-filed rule is, number

22  one, to preserve the resources not only of the courts but also

23  the parties to avoid duplicative litigation, to avoid the risk

24  of inconsistent judgments and decisions, and, thirdly, to

25  promote comity.

1      While the plaintiff in the argument today suggests,

2  well, this is a very modest form of relief and the discovery

3  has to proceed in any event, it really isn't that simple.  When

4  you peel back the first layer of the onion, I think the Court

5  will quickly see that it a going to require delving into the

6  substance in a manner that the court that is ultimately going

7  to decide the merits should be making that determination.

8      The reason I say that is this:  Much of the discovery

9  that they are seeking, although they claim it's narrow and

10  targeted, is actually quite broad and much of it goes to the

11  second declaratory judgment count that relates to whether

12  Ms. Carter had the authority to act as the personal

13  representative.

14      It is clear that there is going to be a Rule 12 motion

15  if the exchange of letters contemplated by the Court's order

16  doesn't resolve it.  There are significant issues that the

17  court hearing the merits is going to have to decide pertaining

18  to that request.  Because in the documents that they attach to

19  the complaint the probate court of Monroe County, Alabama, has

20  issued letters testamentary to Ms. Carter authorizing her to

21  act as personal representative.  That order is entitled to full

22  faith and credit.

23      In addition, there is the probate exception to

24  diversity jurisdiction that we think is going to be in play.

25      We think that there is som *Iqbal* and *Twombly* issues

about the sufficiency of their allegations in that regard, such as the assumption about the existence of a literary agent.

There is the fact that the will that they attach uses the word "may" pertaining to this literary agent, and yet they are suggesting it should be construed as a "shall."

These are just an example of some of the issues. In addition, there is an issue of venue, and there is a potential issue of personal jurisdiction over Ms. Cater individually related to that claim.

The reason I raised all this is Rule 26 when it talks about discovery says that discovery should be directed to discovery relevant to any party's claim or defenses and proportional to the needs of the case.

Well, the Court is going to have to decide what the claims and defenses are going to be in order to decide what's relevant. So, although it seems like a modest request, it actually isn't a modest request and will immediately get into a position of a significant departure from the first-filed rule and the potential stepping on comity, where a court that may not end up deciding the merits is issuing critical decisions relating to the merits with which the other court may disagree.

Now, to some extent, the exigency of the moment that Mr. Zavin raises is a crisis of the plaintiff's own making in that, as the Court noted, the Alabama action was filed on March 13.

1    The plaintiff here, Rudinplay, waited 23 days to file
2 their motion to dismiss or transfer in the Southern District of
3 Alabama.  At the point at which they filed that, they did not
4 ask for expedited consideration of that motion or an expedited
5 briefing schedule.
6    Now, they have taken the maximum amount of time
7 permitted by Judge Steele's order to file their reply brief.
8 All of that is to say they could have urged the Alabama court
9 to move more quickly and they haven't done it, while
10 simultaneously coming to this court and saying in essence there
11 is a five-alarm fire, and we need it decided immediately.
12    I think, as the plaintiff alluded to, the briefing on
13 the motion to dismiss or transfer in the Alabama court will be
14 completed not later than today.  The final brief is due today.
15 Judge Steele is certainly aware of this situation, having
16 issued an order for expedited briefing on the motion to enjoin
17 that's pending before him.
18    So it seems unlikely, although this is just crystal
19 ball gazing, to think that it's going to take very long for the
20 Alabama court to come to a decision.  But it seems like from
21 the first-filed rule perspective the thing to do is this Court
22 should await that decision, and then the decision about this
23 discovery and scheduling of expedited discovery should fall to
24 the Alabama court, or in the event that the Alabama court does
25 not proceed, to this Court.  But it is an inconsistent with the

I4unrudo

1  first-filed rule to even proceed in this limited manner at this
2  time.
3         Now, your Honor, I should say that I think the parties
4  are well aware that this is a matter that requires urgent
5  attention, and I think that the parties can informally be
6  working toward gathering discovery that is clearly going to be
7  relevant, such that whichever court proceeds with the case I
8  think would look askance at the idea that we are all starting
9  from a cold start whenever the resolution of the jurisdictional
10 issue is made.
11        So, at least on an informal basis, I think both sides
12 can be gathering what is clearly going to be relevant without
13 launching into the more formal process with an order from this
14 Court.
15        Your Honor, the one thing I would say, the allusion in
16 the Mr. Zavin's comments about the facts underlying what
17 occurred last September in terms of the comments that were made
18 and what occurred in February, a lot of that involves
19 conflicting declarations.  In the *Holiday Image* case that is
20 from this district that is cited by the plaintiff, a judge in
21 this district said, when you've got competing testimony like
22 that, the party seeking to depart from the first-filed rule has
23 not carried their burden, because all you have is conflicting
24 evidence and the Court obviously can't resolve it at that
25 point.

1           I just wanted to note that a lot of these facts are
2    very much in dispute about how things progressed, and that is
3    something that, you know, they have not carried their burden to
4    justify any sort of departure, limited or general, from the
5    first-filed rule.
6           Your Honor, unless the Court has any questions, I
7    think that exhausts my argument at this point.
8           THE COURT:  I don't.
9           MR. LEMBKE:  Thank you.
10          THE COURT:  Does the plaintiff wish to respond?
11          MR. ZAVIN:  Yes, briefly, your Honor.  I will try to
12   stick directly to what was said.
13          First, Mr. Lembke is right, while some district courts
14   have said it is a bright-line rule on the first-filed rule and
15   which court should decide it, others have not.  I point
16   specifically to Judge Wood's decision in 2012 where she said
17   it's sometimes mistakenly referred to as a bright-line test,
18   and it is actually up to the sound discretion of the court how
19   to apply the first-filed rule, given all the circumstances and
20   as to which court should decide it.
21          There is no judicial overlap at this point.  No one is
22   asking the Alabama court to do anything that we are asking you
23   to do.  There is no inefficiency here.  One of the things that
24   could even make that clearer, your Honor, the plaintiff
25   seems -- I'm sorry, the plaintiff in Alabama, the defendant in

1   this case -- the estate is concerned actually that the
2   complaints aren't actually overlapping, that there are
3   additional claims with respect to the personal representative.
4           One, that can be sorted out in discovery as to which
5   discovery is allowed, if that is a concern.  We could limit the
6   discovery here initially to just the discovery with respect to
7   the play itself, not questions about Ms. Carter, her powers.
8   But certainly the discovery just regarding whether the play
9   derogates, what the communications were with respect to that
10  between plaintiff and defendant and obviously internal
11  conversations by the estate and us.
12          THE COURT:  Are you saying that for a trial to go
13  forward you would withdraw that claim?
14          MR. ZAVIN:  We could bifurcate.  Absolutely we would
15  bifurcate -- whether the second trial would be necessary would
16  be not certain -- but to keep absolute parallelism and to get
17  expedition.
18          Let me be blunt.  Whether there are damages against
19  Ms. Carter does not have to be resolved immediately.  We know
20  that.  What does have to be resolved immediately is whether
21  this play can go forward.  We would certainly bifurcate that
22  issue and bifurcate discovery and bifurcate the trial.
23          If your Honor did not have jurisdiction, ultimately
24  were the Alabama court to decide it did have jurisdiction,
25  there would be absolutely no wasted effort, because that would

be the exact same issue before the Alabama court.

Mr. Lembke in effect volunteered discovery.  I appreciate the offer.  But for this to work, for this to go forward, we need structured discovery.  We need your Honor or a magistrate instructing the parties as to what they have to produce and when they have to produce it, because this has to be aimed at resolving this issue in a very limited period of time or there's nothing left to resolve.

Mr. Lembke, I guess the last thing, he, I guess, castigates us for waiting 23 days to file this complaint or approximately 30 days.  We were trying to work this out.  I mean, it is pretty clear that immediately after the quite surprising complaint was filed we still tried to have that meeting we are entitled to under the contract.

That took until March 22.  We gave them a new script to try to accommodate the concerns.  That new script was given to them in -- I don't recall the exact date, but just a few days before we moved to dismiss the Alabama action.  So we have moved absolutely as rapidly as could be expected, and there is no real factual dispute as to what happened.

The record in terms of the estate's response to the script, the script was sent in August, the first written comments were on March 5.  There is no dispute about that. Their first written comments on the script were March 5, approximately six months after they received the script.

1        That is all, your Honor.

2        Thank you.

3        THE COURT: I will first address whether I should
4   dismiss or stay this case in light of the proceeding in
5   Alabama.

6        Under the prior pending action doctrine, also known as
7   the first-to-file rule, "[w]here there are two competing
8   lawsuits, the first suit should have priority." *Employers
9   Insurance of Wausau v. Fox Entertainment Group, Inc*, 522 F.3d
10  271, 274-75 (2d Cir. 2008). There are two exceptions to this
11  rule: (1) where special circumstances warrant giving priority
12  to the second suit; and, (2) where the balance of convenience
13  favors the second suit. Unless one of these two exceptions is
14  met, the Alabama action, which was filed first, has priority
15  over this lawsuit, and this case should be dismissed or stayed
16  pending resolution of the Alabama lawsuit.

17       There is, however, a threshold question, and that is
18  which court should decide the proper forum for the lawsuit
19  under the prior pending action doctrine. I conclude that the
20  district court in Alabama is the proper court to decide this
21  question.

22       A number of courts in this district have adopted a
23  bright-line rule that the court before which the first-filed
24  action was brought determines which forum will hear the case.
25  *For example, Comcast Corp. v. Rovi Corp.* 16 Civ. 3852, 2016 WL

4991625, at *3. (S.D.N.Y. Sept. 16, 2016). Other courts have rejected this bright-line rule, holding instead that the preference for a decision by the court of the first-filed action is only a sound guideline that courts may decline to follow where the wise administration of justice so requires. *For example, Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc.*, 12 Civ. 3858, 2012 WL 2065294 at *4 (S.D.N.Y. June 7, 2012.) In these cases, the court of the second-filed action has made the decision as to which forum is appropriate. But, these are cases where the second-filed action has progressed significantly further than the first-filed action or where there is no risk of conflicting judgments.

Those circumstances are not present here. An emergency motion on the prior pending action doctrine will be fully briefed in the Alabama action by the end of the day today. There is also a pending motion to dismiss for lack of personal jurisdiction in the Alabama case. Thus, the New York case has not progressed significantly further than the Alabama case, and there is a risk of conflicting judgments on the prior pending action issue. Accordingly, the district court in Alabama is the appropriate court to determine which lawsuit should proceed.

I will not, however, dismiss or stay this action pending the Alabama court's decision. I am aware that the Second Circuit has cautioned that a district court may be in

1    abuse ever its discretion "when it refuses to stay or dismiss a
2    duplicative suit." *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir.
3    1991).
4             Here, however, plaintiff has a compelling need for
5    speedy resolution of the issues in this case.  Plaintiff's
6    right to put on the play will expire in either November 2018 or
7    May 2019 -- there is a factual question as to the exact date
8    which need not be resolved now.  Plaintiff has submitted the
9    declaration of Joey Parnes, the executive producer of the play,
10   who has over 35 years of experience as a producer on and off
11   Broadway.  He states that the plaintiff needs to raise several
12   million dollars by July of this year to proceed as scheduled
13   and that the cloud of pending litigation will make raising the
14   funds "nearly impossible."  He also states that if the play can
15   not proceed as scheduled, it is extremely unlikely that
16   plaintiff will be able to secure a new venue before May 2019.
17   Therefore, if this action is stayed, and the Alabama court
18   later decides that this Court is the proper forum for the
19   lawsuit or that it lacks personal jurisdiction over plaintiff,
20   plaintiff will lose crucial time in resolving this dispute.  I
21   have reviewed the papers in the Alabama action, and plaintiff
22   has raised strong arguments that the court in Alabama lacks
23   personal jurisdiction.  Accordingly, this case shall proceed
24   pending the Alabama court's decision on the proper forum for
25   the lawsuit.

1            I now turn to plaintiff's motions for expedited
2    discovery and a trial for May 21.
3            Under Federal Rule of Civil Procedure 57, a court may
4    order a speedy hearing of a declaratory judgment action.  A
5    leading treaties on Federal Practice and Procedure has
6    explained that speedy resolution of declaratory judgment
7    actions is so sensible that there is a dearth of decided cases
8    involving Rule 57.  *Wright and Miller*, *et al.*, *Federal Practice*
9    *and Procedure* Section 2768.  I have already discussed
10   plaintiff's strong need for a speedy resolution of this action.
11   May 21, however, is too soon.  Accordingly, trial is scheduled
12   to commence on June 4, 2018, and will last for two weeks.  I
13   will issue an order after this hearing setting forth the trial
14   schedule in more detail and setting a schedule for the filing
15   of the joint pretrial order and any pretrial motions.
16           Turning to plaintiff's request for expedited
17   discovery, I am referring this matter to Magistrate Judge
18   Stewart D. Aaron for general pretrial supervision, which
19   includes supervision of all discovery issues.
20           Immediately after the conclusion of this hearing, the
21   parties shall go straight to Courtroom 11C for a hearing in
22   front of Judge Aaron on plaintiff's motion for expedited
23   discovery.
24           Are there any further applications?
25           MR. ZAVIN:  No, your Honor.

I4unrudo

1               MR. LEMBKE:  No, your Honor.

2               THE COURT:  The matter is adjourned.

3               MR. ZAVIN:  Thank you, your Honor.

4               (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 1:18-cv-00117-WS-B   Document 35-2   Filed 04/30/18   Page 20 of 20